IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES A. WILLIAMS,

                               OPINION AND ORDER

                Plaintiff,

                               12-cv-802-bbc

       v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff James Williams is seeking review of a decision denying his claims for disability benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g).  The administrative law judge concluded that plaintiff's substance abuse was a contributing factor material to the disability determination and that if that factor were absent, plaintiff could still perform limited, medium work at jobs that existed in significant numbers in the national economy.  Plaintiff says that the administrative law judge failed to apply the correct legal standard or rely on a medical opinion in considering his substance abuse; and did not give proper weight to the opinions of plaintiff's treating physicians. Because I find that the administrative law judge did give appropriate consideration to the evidence of plaintiff's substance abuse and had good reasons for rejecting the treating physicians' reports, I am affirming the decision.

The following facts are drawn from the administrative record (AR).

1

RECORD FACTS

A.  Background and Procedural History

Plaintiff James Williams has an eighth grade education and some work experience as a janitor.  AR 42-43.  He lives with his girlfriend and their four-year-old child.  AR 41. Plaintiff filed applications for disability insurance benefits and supplemental security income on May 6, 2010, contending that he had been disabled since September 1, 2009 because of post traumatic stress disorder, anxiety, depression and alcoholism.  AR 10, 127, 134, 149, 154.  Plaintiff was born on October 18, 1982, making him 26 years old on his alleged disability onset date.  AR 24, 41.

On August 25, 2011, plaintiff appeared at a video hearing before Administrative Law Judge Larry Meuwissen.  He was represented by a lawyer, David Fitzpatrick.  AR 10.  The administrative law judge heard testimony from plaintiff; plaintiff's girlfriend, Kayla Newsom; and a vocational expert, Mitchell Norman.  AR 38.

The administrative law judge denied plaintiff's claim on August 31, 2011.  AR 26. In his decision he found that plaintiff had severe impairments of mild degenerative changes of the lumbar spine, anxiety and depression with anger outburst problems versus major depression (single episode), post traumatic stress disorder, panic disorder not otherwise specified, polysubstance dependence, possible attention deficit disorder and mild intellectual disability.  The administrative law judge found that when plaintiff was using alcohol and marijuana, his mental impairments met those listed in sections 12.02, 12.06, 12.08 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1; if, however, plaintiff stopped his

2

substance use, none of his impairments would meet or medically equal a listed impairment and he would have the residual functional capacity to perform medium work limited to routine, repetitive, three and four step tasks; brief, superficial contact with coworkers and the public; no sustained close contact with others; and no more than minimal stressors and changes in a routine, repetitive work setting. The administrative law judge noted that the non-exertional limitations accounted for plaintiff's mental health symptoms, including the moderate difficulties he had in maintaining social functioning and concentration, persistence and pace when he was not using alcohol. AR 13-17, 19. Because the administrative law judge found that substance abuse was a contributing factor material to the disability determination, he denied plaintiff's application. AR 25.

The administrative law judge reviewed the medical records, the opinions of plaintiff's treating physicians (Dr. Downing, Dr. Bucknam and Dr. Porter), the opinions of two state agency medical consultants (Dr. Angle and Dr. Alsdurf) and the hearing testimony. AR 13-24. Although he gave significant weight to the opinion of the state agency psychologist, he found that the check-off forms completed by the three treating physicians carried little probative weight. AR 22-23. The administrative law judge also found plaintiff's allegations of disability not entirely credible for a variety of reasons. AR 20-22.

On September 12, 2012, the Appeals Council declined to review the case. AR 1.

B. <u>Medical Evidence</u>

On September 17, 2009, plaintiff saw his treating physician, Dr. Ricky Waniger, for depression and anger management. Plaintiff reported increased irritability, hypervigilance, a lack of enjoyment in his regular activities low motivation, anxiety, sadness and crying spells. He admitted using alcohol on occasion. Dr. Waniger prescribed Citalopram 20mg and encouraged him to seek counseling. AR 239-40.

In September 2009, plaintiff saw Joseph Bodnar, a counselor, for an intake and one followup session. On September 16, he told Bodnar that he was "going crazy" and having a "nervous breakdown." He also reported feeling too aggressive, easily angered, paranoid and depressed. He said he had had a recent "run in" with the cops. AR 258. In his September 18 intake report, Bodnar reported that plaintiff was working part-time for a cleaning service and playing football for a semi-pro team in the area. Plaintiff stated that he had a history of explosive anger, that he had witnessed and experienced violent trauma as a child and that he had increasing symptoms of anxiety and depression. He reported using alcohol in the past but denied that it was a current problem. Bodnar noted that plaintiff was dressed appropriately; his speech was goal directed and connected to his thinking; his insight and judgment demonstrated understanding of his problems; he had a good attention span and concentration; his use and fund of knowledge were adequate; and he was oriented to time, place and person. He diagnosed major depression (single episode), post traumatic stress disorder, panic disorder not otherwise specified and a Global Assessment of Functioning score of 55. AR 255-57.

4

At a followup appointment with Waniger on October 14, 2009, plaintiff reported continuing problems with anxiety and an increase in his alcohol consumption. Waniger changed plaintiff's medication to Paroxetine and Clonazepam. AR 239.

On November 5, 2009, plaintiff began seeing a social worker, Robert Bablitch, for psychotherapy. He reported an increase in his alcohol use. Bablitch noted that plaintiff had a bright affect, fairly good judgment and insight. AR 253. On November 23, 2009, Bablitch noted that plaintiff had experienced a very difficult week because he had lost a cousin to cancer. He continued to experience anxiety, which occurred primarily when he was working at Macy's. Plaintiff also admitted to continued alcohol use of six to seven beers at a time. AR 251. Bablitch reported that plaintiff's affect was generally within normal limits and he described plaintiff as oriented in three spheres with generally good grooming and no suicidal thoughts. He noted that plaintiff had anxiety and paranoid thinking. AR 252.

On December 7, 2009, plaintiff reported to Waniger that he was continuing to have problems with anxiety, crying spells and panic attacks. The symptoms had been made worse by the recent death of his cousin. Plaintiff also stated that he was drinking six to seven beers a day, four or five days a week. AR 237. On December 21, 2009, plaintiff saw Bablitch and reported doing a good job abstaining from alcohol. Bablitch noted that plaintiff was taking his prescribed medication and meeting his treatment goals of abstaining from alcohol and reducing his anxiety and isolation. Bablitch reported that plaintiff had a bright affect, was talkative and had fairly good insight and judgment. AR 250-51. On December 31, 2009, plaintiff reported that although his depression and anxiety were improving with medication,

5

he still had spells of rage.  He also reported that he was drinking about two times a week.  AR 234.  Waniger increased the dosage of plaintiff's medication.  AR 232.

In January 2010, plaintiff asked to see a psychiatrist so that he could apply for disability benefits.  On January 19, 2010, he saw Dr. Michelle Bauer, who noted that he seemed pleasant, spoke fluently and coherently and had a euthymic (normal) mood.  Plaintiff estimated that he drank about 12 beers a day several times a week.  Bauer diagnosed alcohol abuse, symptoms of post traumatic stress disorder, learning disability and a Global Assessment of Functioning score of 55.  AR 249-50.

Together with his girlfriend, plaintiff saw Dr. Bauer again on January 28, 2010.  He and his girlfriend reported that plaintiff got angry all the time, was impatient and self-centered and had problems sleeping.  Bauer noted that plaintiff was quiet, cooperative and relaxed but had limited insight and judgment.  She recommended group therapy and started plaintiff on Depakote for mood stabilization.  AR 248.  Plaintiff also saw Waniger on the same day and reported that he was continuing to struggle with anger management.  Waniger switched him to Effexor XR.  AR 232-33.

By February 2, 2010, plaintiff reported to Bablitch that he was less anxious, less depressed and using less alcohol since he had started his new medication.  Although he still had some problems with anger, he was getting along well with his "partner" (presumably Bablitch is referring to plaintiff's girlfriend, Kayla Newsom) and continued to work six hours a week as a cleaner at the mall.  Bablitch noted that plaintiff's affect was bright and that his insight and judgment were fair.  They discussed the dangers of alcohol use and the negative

relationship of alcohol to anger.  AR 247.  However, on March 4, 2010, plaintiff's partner told Bablitch that plaintiff did not come home at night and continued to abuse alcohol.  She also reported that plaintiff did not take his medications as directed.  Bablitch noted that plaintiff's affect was slightly flat at that visit.  AR 246-47.

By May 6, 2010, plaintiff told Bablitch that he was doing much better and was less anxious.  He had stopped working at the mall, was no longer using alcohol and was getting along better with his partner.  Bablitch noted that his affect was brighter.  They discussed the importance of sobriety, as well as the negative relationship among depression, anxiety and alcohol use.  AR 246.  Soon after this visit, plaintiff's sobriety took another turn for the worse:

- On May 11, 2010, plaintiff reported to Dr. Bauer that he was doing "okay" but had not been working for about three months and had begun using marijuana.  Bauer noted that plaintiff was "very pleasant as usual," quiet, cooperative and calm.  She described his thought processes as logical and rated his insight and judgment as fair.  AR 295.

- Plaintiff missed his May 19, 2010 appointment with Bablitch.  AR 294.  On June 17, 2010, he told Bablitch that he had become intoxicated, blacked out and apparently gotten into a fight.  After noting that plaintiff was having trouble meeting treatment goals, Bablitch commented that he would do much better if he did not use any marijuana or alcohol.  They spent most of the session talking about the negative impact plaintiff's alcohol use had on his depression, as well as his anxiety.  AR 293-94.  Also on May 19, plaintiff requested a transfer from the care of Dr. Bauer, explaining that he would prefer a nurse practitioner with whom he could engage in more discussion.  AR 293.

- Plaintiff did not have further medical care until he met with Bablitch on September 30, 2010 because he was incarcerated.  AR 382, 398.  Plaintiff had gotten into an altercation with his girlfriend when he was intoxicated and started pushing and shoving her.  He had a hearing

scheduled for October 4, 2010.  Bablitch noted that plaintiff needed to address his alcohol issues but had a poor recovery environment because several of his friends drank.  AR 382.

Plaintiff next saw Bablitch on November 4, 2010, after he had been released from jail. Bablitch noted that plaintiff was doing much better and had abstained from alcohol for more than a month.  Plaintiff attributed most of his problems to alcohol.  He was working on his anxiety and social phobia issues by trying to get out of the house at least once a day.  AR 383.

On December 9, 2010, plaintiff saw Dr. William Bucknam, who noted that plaintiff was having anger management issues and a labile (easily altered) mood.  Bucknam had tried plaintiff on Venalfaxine but found that the dosage required to control his symptoms caused him to gain weight, which in turn aggravated his back.  Although plaintiff reported abstinence from alcohol, Bucknam expressed concern because he was not availing himself of any support system.  Plaintiff asked to get back on Paxil because it gave him some control over his moods.  Bucknam listed plaintiff's diagnoses as post traumatic stress disorder, bipolar affective disorder and alcohol dependence.  AR 384.  On the same day, Bablitch noted that plaintiff was feeling a lot better, had abstained from alcohol since November and was on a new mood stabilizer.  AR 386.

On January 20, 2011, plaintiff told Bablitch that he had done a good job maintaining sobriety.  He felt good about his involvement in a local football league and reported that  his girlfriend (Newsom) had been very supportive of his sobriety.  Bablitch commented that

plaintiff had done quite well since their last visit and spoke to him again about the importance of sobriety.  AR 387.

Plaintiff saw Dr. Bucknam on February 15, 2011 and reported that the medications were helping, he was less quick to temper and he felt less emotionally labile.  However, he reported feeling quite emotional the previous evening and frequently being unable to tolerate his family members.  Bucknam noted that plaintiff's affect was pleasant and that he interacted well with his then three-year-old child.  AR 388.

During his visits with Bablitch in February and March 2011, plaintiff reported that he was doing quite well and abstaining totally from alcohol.  AR 389-90.  On March 28, 2011, Dr. Bucknam noted that plaintiff recognized that if he had been drinking, he likely would have gotten into trouble.  Bucknam also wrote that plaintiff was in "unstable early remission" from alcohol dependence.  AR 391.

On April 19, 2011, plaintiff saw Dr. Bucknam, who described plaintiff as an easily frustrated person who avoided crowds and had been unable to work as a result of these problems.  Bucknam observed that plaintiff was talkative, adequately dressed and groomed and friendly and cooperative with good eye contact.  According to Bucknam, there was a clear brightening of plaintiff's affect as compared to a few months earlier.  Plaintiff did report that he "snapped" and lost his temper recently after his cousin's boyfriend had became violent toward other family members.  Plaintiff beat up the man four different times before others intervened.  AR 394.

On April 26, 2011, Bablitch described plaintiff's affect as generally bright. Plaintiff reported that he was maintaining sobriety with the medication prescribed by Dr. Bucknam, getting along fairly well with his girlfriend and was enjoying playing on a local football team. Bablitch noted that plaintiff was meeting all his treatment goals at that time. AR 395.

Suspecting that plaintiff suffered from attention deficit disorder, Bucknam referred him for a cognitive functioning evaluation. Sarah Downing, Psy.D. met with plaintiff on April 20, 2011 for a diagnostic interview. She observed that plaintiff described significant cognitive and emotional symptoms that appeared to interfere with his daily functioning and interpersonal relationships. Downing recommended a neuropsychological evaluation. AR 355-57. Stephen H. Porter, Ph.D., met with plaintiff on May 6, 2011 to gather background information for the evaluation. AR 356. On May 10, 2011, Dr. Downing issued her report on plaintiff's neuropsychological assessment and noted that it demonstrated that he had some intellectual and functional complications. Testing indicated that he had borderline to mildly impaired intelligence with significant attentional deficits and high impulsivity and that he was impaired on tasks involving complex or sustained attention. AR 357-59. Downing strongly recommended gearing his treatment toward post traumatic stress disorder "to assist him in engaging in life rather than becoming holed up in his residence." AR 359. She diagnosed post traumatic stress disorder, depression and mild intellectual disability, adding that his mood fluctuations were not consistent with bipolar disorder and were more related to his poor frustration tolerance, low intellectual functioning and limited ability to cope. AR 359.

On May 17, 2011, Dr. Bucknam reviewed Downing's report and concluded that plaintiff had a limited capacity to cope.  He described plaintiff as pleasant and cooperative, easily frustrated and overwhelmed and unable to sustain attention.  Bucknam diagnosed bipolar affective disorder type II, borderline low intelligence, prolonged post traumatic stress disorder and alcohol dependence in stable early remission.  AR 396.

## C.  State Agency Psychologists

On July 6, 2009, plaintiff saw Rebecca Angle, Ph.D. for a psychological evaluation on a referral from the Social Security Disability Determination Bureau about a possible learning disability and behavioral problems.  Plaintiff reported having had problems for a long time and frequently getting angry and easily frustrated.  He described experiencing rages where he wanted to destroy things and hurt people.  Plaintiff reported drinking only two beers once a month.  Angle diagnosed oppositional defiant disorder and borderline intellectual functioning based on plaintiff's self-reported problems getting along with others, a history of physical altercations and symptoms of anger and irritability.  She wrote that plaintiff had a history of confrontations with supervisors and coworkers but was able to sustain his attention and concentration and had the mental capacity to understand, remember and follow simple instructions.  AR 222-25.

On June 5, 2010, Dr. James F. Alsdurf, PhD., completed a Psychiatric Review Technique form and Mental Residual Functional Capacity form, finding that plaintiff's mental impairments did not meet or equal the requirements of any listed impairment.  With

respect to the "B" criteria, Alsdurf found that plaintiff suffered mild limitations in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence, and pace and no episodes of decompensation.  AR 272-284.

On the Mental Residual Functional Capacity form, Dr. Alsdurf found that plaintiff was markedly limited in the ability to understand, remember and carry out detailed instructions and moderately limited in his abilities to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete work without interruptions from psychologically based symptoms and perform at consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors.  Despite finding these limitations, Dr. Alsdurf was of the opinion that plaintiff retained the mental capacity to concentrate on, understand, remember and carry out routine, repetitive instructions.  He also found that plaintiff's ability to cope with co-workers and the general public would be reduced but adequate for brief and superficial contact.  Similarly, plaintiff's ability to tolerate and respond appropriately to supervision would be reduced but  adequate to handle reasonably non-authoritarian supervisory styles that could be expected to be found in many customary work settings.  AR 286-88.

D.  Treating Physicians' Opinions

On June 22, 2011, plaintiff's attorney sent Dr. Downing, Dr. Bucknam and Dr. Porter a letter with five yes-or-no questions.  In her June 30, 2011 response, Downing checked yes to the questions asking whether plaintiff had marked limitations or was unable to meet competitive standards in the following areas:  understanding, remembering and carrying out simple instructions (primarily if distractions were present); maintaining attention for a minimum of two hours; getting along with coworkers, supervisors and the general public and accepting criticism from supervisors; and dealing with normal work stress. She did not answer the question about whether drug or alcohol abuse was a material factor. Downing also wrote that "limitations related to low intellectual functioning are likely permanent but mental health issues may be improved with ongoing treatment with therapy and psychotropic medications."  AR 421-22.

In his July 8, 2011 response to the form, Dr. Buckman noted that plaintiff had marked limitations or inability to meet competitive standards in understanding, remembering and carrying out simple instructions; maintaining attention for a minimum of two hours; maintaining regular attendance; completing a normal work day without interruptions; getting along with others in the work place and accepting criticism from supervisors; and dealing with normal work stress.  He noted that plaintiff's use of drugs and alcohol was not a material factor.  Dr. Buckman further reported that plaintiff would likely be absent two days or more each month because of his condition and would have difficulty sustaining regular employment on a full time basis.  AR 427-428.

13

Dr. Porter completed the form on July 12, 2011, noting that plaintiff had marked limitations in maintaining regular attendance; completing a normal workday without interruptions; getting along with coworkers, supervisors and the general public and accepting criticism from supervisors; and dealing with normal work stress.  He added that plaintiff's condition would be likely to cause him to be absent two days or more each month and he would have difficulty sustaining regular employment on a full time basis.  In response to the question about drug and alcohol abuse being a material factor, Dr. Porter wrote:  "not sure was issue in past." AR 424-25.

OPINION

A.  Treating Physician Opinions

Plaintiff contends that the administrative law judge failed to provide good reasons for rejecting the opinions of his treating physicians, Dr. Buckman, Dr. Downing and Dr. Porter, whom he alleges all reported limitations that would preclude competative employment. Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. § 404.1527(d)(2).  When, however, the record contains well-supported contradictory

14

evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  Among these factors are how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling and how consistent the physician's opinion is with the evidence as a whole, and other factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009).  Although an administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., a minimal articulation of his reasoning is all that is required, Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008)(describing standard as "very deferential" and "lax").

## 1. Dr. Downing

The administrative law judge provided several reasons for giving Dr. Downing's assessment little probative weight.  First, he noted that she failed to answer the question regarding whether drug or alcohol abuse was a material factor and did not mention the plaintiff's history of drug and alcohol abuse in her narrative assessment.  Plaintiff takes issue with these findings because "the ALJ decided that DAA was a material factor only by his erroneously substituting his opinion for that of all of the medical experts."  Dkt. #17 at 40. As discussed above, however, plaintiff has failed to show that the administrative law judge made an improper finding regarding his substance abuse.  Further, the administrative law judge correctly noted that nothing in Downing's conclusory opinion or limited treatment

notes showed that she considered the effects of his substance abuse in completing the check-off form.

Second, the administrative law judge noted that Downing saw plaintiff over a very short period of time for only one or two sessions of neuropsychological testing and did not say whether she had the opportunity to review plaintiff's treatment records from other providers. AR 22-23. Plaintiff points out that because Downing treated him at Gundersen Lutheran, where he had received treatment for a number of years, she would have had access to his entire record. This may be true, but Downing saw plaintiff only a few times to perform testing and was not involved in his long-term care. The administrative law judge was entitled to consider this factor in assessing the weight of her opinion.

Finally, the administrative law judge noted that there was no evidence that Downing was familiar with the regulations and rules under which disability determinations were made or the terms of art used in the lawyer's questionnaire she was completing. Plaintiff argues that the administrative law judge cites no rule or regulation requiring such a familiarity. Although plaintiff is correct, the administrative law judge noted in his discussion of Dr. Bucknam's opinion that the form was conclusory and did not allow any of the physicians to explain their findings or tie them to the objective medical evidence. Without a better record from Downing, it is difficult to discern whether she understood the function-based questions on the form, particularly the one asking whether substance abuse was a "material factor." Even if this was not the best reason the administrative law judge could give for discounting

16

Downing's opinion, it was only one of several reasons, most of which were sufficient to justify his decision.

2. <u>Dr. Bucknam</u>

The administrative law judge noted that he did not give great weight to Dr. Buckman's assessment because the form was prepared by plaintiff's attorney and used conclusory language that left little room for the physician to support his opinion with objective medical findings. He determined that the bases of Bucknam's opinions were not clear from the form, particularly because Bucknam's examinations of plaintiff's mental status had been generally unremarkable and did not support the severe symptoms that would justify the conclusions he noted in the assessment. A review of the record cited by the administrative law judge indicates that this is true. Although Bucknam noted some incidents in which plaintiff exhibited anger and aggression and questions plaintiff's ability to sustain attention, he emphasized how plaintiff's symptoms improved as he progressed with his sobriety. Bucknam's progress notes have no clear link to his opinion that plaintiff had marked (versus moderate or mild) limitations in understanding, remembering and carrying out *simple* instructions; maintaining attention for two hours; or maintaining regular attendance. For example, in his last progress note, he summarized Downing's test results and noted that plaintiff was impaired with respect to tasks involving *complex* or *sustained* attention. He did not mention inability to process simple instructions or accomplish simple tasks; absenteeism; or missing appointments. The administrative law judge accounted for

17

plaintiff's limitations in these areas and his low intelligence in the residual functional capacity assessment, which plaintiff has not challenged.

Finally, the administrative law judge reached the reasonable conclusion that Bucknam appeared to rely quite heavily on plaintiff's subjective reports, which he found not entirely credible for a variety of reasons. AR 23. Plaintiff notes that this conclusion has merit but generally contends that "the record is full of references to objective signs and symptoms." Dkt. #17 at 41. His argument misses the point. Regardless whether plaintiff is correct about the record, he fails to challenge the administrative law judge's conclusion that Bucknam relied primarily on plaintiff's self-reports. Because the administrative law judge found plaintiff not entirely credible and plaintiff has not challenged the administrative law judge's credibility findings, plaintiff has not refuted the administrative law judge's decision to discount Bucknam's opinion.

### 3. Dr. Porter

The administrative law judge found no evidence that Dr. Porter treated plaintiff during the applicable time period. He pointed out that Dr. Porter did not seem to know whether drugs and alcohol remained a factor for plaintiff. As a result, it was not clear on what Dr. Porter based his conclusory assessment of plaintiff's work-related limitations. As an example, the administrative law judge pointed out that Porter did not explain why he answered "yes" to the question about whether plaintiff likely would be absent from work two or more days each month because of his condition. AR 23.

18

Plaintiff raises only a cursory challenge to each of these findings. He contends that they are erroneous without explaining why. He asserts that it is "mind boggling how the ALJ could question the knowledge [of] Dr. Porter who serves as a vocational expert for Social Security in numerous hearing[s]" and "headed the vocational rehabilitation department at Gundersen Lutheran at the time of the report." Plt.'s Br., dkt. #17 at 41. However, the administrative law judge did not reject Port's opinion because Porter did not have sufficient expertise or because another physician had greater expertise. Contrary to plaintiff's assertions, it is clear that Porter spent only a few sessions gathering information from plaintiff in 2011 to facilitate neuropsychological testing. As a result, there seems to be little basis for the opinions that Porter provided in response to the yes-or-no questions from plaintiff's attorney.

In sum, plaintiff has failed to show that the administrative law judge erred in weighing the opinions of Downing, Bucknam and Porter. He gave sound reasons for discounting the opinions and considered the relevant factors. He also factored into his residual functional capacity assessment many of the limitations noted by the physicians

B. <u>Substance Abuse</u>

Plaintiff's claim is complicated by his history of substance abuse. Under the Social Security laws, a person is not eligible to receive benefits if substance abuse is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The claimant bears the burden of proving that alcoholism or drug addiction

is not a contributing factor.  <u>Kluesner v. Astrue</u>, 607 F.3d 533, 537 (8th Cir. 2010); <u>see also</u>

<u>Harlin v. Astrue</u>, 424 Fed. Appx. 564, 567 (7th Cir. 2011).  The applicable regulations state:

> (a) General.  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
>> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>>
>> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.  Thus, "the issue for the administrative law judge is

whether, were the applicant not a substance abuser, [he] would still be disabled."  <u>Kangail</u>

<u>v. Barnhart</u>, 454 F.3d 627, 628–29 (7th Cir. 2006).

Plaintiff makes a vague and convoluted argument about the administrative law judge's failure to apply the law correctly in social security cases addressing drug and alcohol abuse. Dkt. #17 at 32-36.  He does not challenge the administrative law judge's findings with respect to the listings, his residual functional capacity or even his credibility.  Instead, he contends in general terms that the administrative law judge failed to analyze his condition in accordance with the regulations related to substance abuse and did not consider whether his substance abuse was "separable from the underlying condition."  However, his primary argument appears to be that the administrative law judge played doctor when he determined that plaintiff's substance abuse was material to the finding of disability because there is no medical opinion in the record supporting this finding.

It is unclear what plaintiff believes the administrative law judge ignored in applying the regulations related to substance abuse.  In accordance with the regulations, the administrative law judge began by making a disability determination irrespective of plaintiff's substance abuse and then considered what limitations would remain if plaintiff's drug and alcohol addiction were absent.  He found that plaintiff's mental impairments, including his substance abuse, met the criteria set forth in Listings 12.02 (organic mental disorders), 12.08 (personality disorders) and 12.09 (substance addiction disorders). AR 13. The administrative law judge then determined that, without the substance abuse, plaintiff's anxiety, depression, anger outburst problems, post traumatic stress disorder and panic disorder would not meet the listed impairments because there was no evidence that he satisfied the "B" criteria of Listings 12.02, 12.06 (anxiety related disorders) or 12.08.  AR

15.  He also found that without the substance abuse, plaintiff's physical and mental impairments would restrict him to a limited range of medium work.  AR 17-24.

Although I agree with plaintiff that no medical opinion in the record states specifically that plaintiff's substance abuse was a factor material to his disability or that details the specific effect that substance abuse has on plaintiff's mental impairments, the Social Security regulations do not require such an opinion or explanation.  (I note that Dr. Buckman checked "yes" when asked on a simple form whether plaintiff's drug abuse was not a material factor in his underlying condition.  AR 427-28.  However, as discussed in the previous section of this opinion, the administrative law judge provided sound reasons for rejecting that opinion.)

In support of his argument, plaintiff cites an Emergency Teletype issued by the Social Security Administration:

27.  Q. Is it appropriate for an MC/PC [medical consultant/psychological consultant] to conclude that he/she cannot project what limitations, if any, would remain if drug/alcohol use stopped and let the DE [disability examiner] make a determination that DAA is not material?

A. Yes.  There will be cases in which the evidence demonstrates multiple impairments, especially cases involving multiple mental impairments, where the MC/PC cannot project what limitations would remain if the individual stopped using drugs/alcohol.  In such cases, the MC/PC should record his/her finding to that effect.  Since a finding that DAA is material will be made only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs/alcohol, the DE will find that DAA is not a contributing factor material to the determination of disability.

                    *    *    *

29.  Q. The most complicated and difficult determinations of materiality will involve individuals with documented substance use disorders and one or more

other mental impairments.  In many of these instances, it will be very difficult to disentangle the restrictions and limitations imposed by the substance use disorder from those resulting from the other mental impairment(s).  Can any examples be provided for how to handle the materiality determination in these situations, or can any guidance be provided for the type of information that should be used in trying to assess the impact of each impairment?

A. We know of no research data upon which to reliably predict the expected improvement in a coexisting mental impairment(s) should drug/alcohol use stop.  The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol.  Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence.  When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of "not material" would be appropriate.

Answers 27 and 29, Emergency Teletype No. EM-96200, Office of Disability, Social Security Administration, "Questions and Answers Concerning DAA from the July 2, 1996 Teleconference-Medical Adjudicators-ACTION," August 30, 1996.  These excerpts indicate only that, in the event it cannot be determined which of the claimant's limitations would remain if the claimant abstained from alcohol, a decision should be made in favor of the claimant.

Plaintiff implies that the administrative law judge should have called a medical or psychological consultant or advisor to testify regarding the materiality issue.  This court rejected the same argument in Piotrowski v. Astrue, No. 07-cv-587-jcs, 2008 WL 4449977 (W.D. Wis. Apr. 21, 2008) (Crabb, J.) (finding that teletype does not impose requirement to call consultant).  Id. at *10.  An administrative law judge must consult a medical expert only if the evidence before him is not sufficient to make a determination.  20 C.F.R. §§

404.1527(e)(2)(iii), 416.927(e)(2)(iii) (administrative law judge *may* ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).  Further, when a plaintiff is represented by counsel, the administrative law judge is entitled to assume that counsel will make a request for a consulting expert if one is necessary.  Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987) (administrative law judge can assume that applicant represented by counsel is "making his strongest case for benefits").

Plaintiff has not developed an argument that the evidence before the administrative law judge was insufficient.  Although he states generally that no medical evidence in the record links "his mental limitations to his substance abuse," he fails to discuss why he finds the administrative law judge's extensive analysis inadequate.  He provides a bit more context in his reply brief, but those arguments are waived because he failed to raise them in his opening brief and provide the Commissioner an opportunity to respond.  Broaddus v. Shields, 665 F.3d 846, 854 (7th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are waived").

Contrary to plaintiff's assertions, the administrative law judge's discussion of the evidence that formed the basis of his opinion is thorough and persuasive.  He compared plaintiff's symptoms when he was sober to his symptoms when he was using alcohol and marijuana.  The administrative law judge identified plaintiff's various periods of sobriety and provided several examples of how "the record reflects [plaintiff's] improved functioning and presentations for examinations."  AR 20-21.  He concluded that when plaintiff was sober,

24

he had only mild restrictions in his daily activities, was able to take care of his personal needs and did not have marked difficulties with social functioning or concentration, persistence and pace.  AR 15.  In support, he pointed out that plaintiff was doing better, playing football, getting along with his girlfriend and having brighter moods and more positive social interactions during his periods of sobriety.  AR 16, 20.

In contrast, the administrative law judge found that plaintiff's symptoms were quite severe when he was not sober, as evidenced in part by the progress notes from Waniger, Bablitch and Bauer between late 2009 and 2010 and plaintiff's 2010 incarceration for fighting when he was intoxicated.  AR 14.  This analysis was consistent with the regulations and is supported by the record.  Because the administrative law judge properly considered whether plaintiff would still be disabled if he were not a substance abuser, remand is not warranted.  Kangail, 454 F.3d at 628.

ORDER

IT IS ORDERED that plaintiff James Williams's motion for summary judgment is DENIED and the decision of the commissioner is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 22d day of August, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

25